Keren Tamali Sita
25 Franklin Street, Unit 203
Essex Junction, 05452
802-307-8930 | 802-225-0476
sitakerenvt@gmail.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| **KEREN SITA,** | Case No.: 2:24-cv-899 |
| Plaintiff, | |
| vs. | VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION |
| **U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT- OFFICE OF FAIR HOUSING & EQUAL OPPORTUNITYREGION I** | |
| **JORDAN STALEY** | |
| DEFENDANT | |

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

### COMPLAINT AT LAW

1.  NOW COMES Plaintiff, Keren Sita (referred to as "Miss Sita" or "Plaintiff"), both as a strong-willed United States citizen and as a pro se litigant. With unwavering determination, I file this Federal Complaint against the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT- OFFICE OF FAIR HOUSING & EQUAL OPPORTUNITY, REGION I, and Federal Investigator/Equal Opportunity Specialist, JORDAN STALEY.

2.  Plaintiff Keren Sita, a strong and beautiful black woman, brings this action against HUD Employee JORDAN STALEY for violations of my constitutional rights under 42 U.S.C.A. § 1983., seeking redress for retaliatory actions taken unfairly against me.

### JURISDICTION

3.  The jurisdiction of the federal court in this case is grounded in the statutes set forth in 28 U.S.C. §§1331 and 1343. Pursuant to 28 U.S.C. §1331, the court is empowered to adjudicate matters stemming from federal law or U.S. Constitutional interpretation.

4.  Specifically, this legal action pertains to constitutional provisions, encompassing the right to freedom of expression under the First Amendment, Fifth Amendment rights including due process which ensures proper procedural safeguards are in place before dismissing or mishandling government case, the Equal Protection Clause of the Fourteenth Amendment, and the stipulations under 42 U.S.C.A. § 1983.

### VENUE

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 1

5. Pursuant to 28 U.S.C. §1391, venue properly lies in the United States District Court for the State of Vermont, as this is the district where the parties reside and where the events complained of occurred.

**PARTIES**

6. I, KEREN SITA, a women residing in Chittenden County, State of Vermont. As a member of a protected class based on my race, color, national origin, and gender, I am entitled to civil rights protections guaranteed under both the State and Federal Constitution as a citizen of the United States and Vermont.

7. Defendant The U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT- OFFICE OF FAIR HOUSING & EQUAL OPPORTUNITY REGION I. HUD principal place of business in Vermont is located at 95 Saint Paul Street, Suite 440, Burlington, VT 05401-4486.

8. Defendant JORDAN STALEY, serve as a Federal Investigator/Equal Opportunity Specialist employed by the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT- OFFICE OF FAIR HOUSING & EQUAL OPPORTUNITY REGION I, with Mr. Staley principal place of business is located at 95 Saint Paul Street, Suite 440, Burlington, VT 05401-4486.

**FACTUAL BACKGROUND/ STATEMENT OF FACTS**

9. As a longstanding resident of Vermont, I found myself caught in a discrimination issue at my housing facility under the Champlain Housing Trust.

10. Feeling targeted and unfairly treated, I raised a complaint with HUD to address the discrimination I faced. HUD took on the case, assigning Investigator Jordan Staley to collaborate with me in investigating my claims.

11. Initially, I was taken aback by the choice of Investigator Jordan due to my past encounters with undercover discrimination and racism in Vermont.

12. Understanding the racial dynamics in the region, I held reservations about being paired with another Black individual, fearing a perpetuation of discriminatory practices through internal division.

13. Despite my initial concerns, I decided to work alongside Jordan, primarily staying in touch through phone calls and emails.

14. Throughout our interactions, the relationship between Jordan and me was marked by a sense of professionalism tinged with underlying tension.

15. Given the deeply personal and emotionally charged nature of the case for me, our dynamic often turned contentious.

16. Jordan's demeanor, frequently perceived as dry, uncompassionate, detached and disinterested, strained our working relationship, heightening my feelings of frustration and discomfort.

17. The critical moment arose when I chose to visit the HUD office in person, hoping to gain a better understanding of the progress of my case and potentially establish a more personal connection with Jordan.

18. However, during our face-to-face encounter, a disquieting event transpired.

19. Stepping into the HUD office that day was not just about a routine check for me, but a bold move to surprise Jordan, the federal investigator assigned to my case.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 2

20. I was convinced that Jordan, although appearing as merely an unassuming Black man, was under the subtle influence of racist forces at play.

21. In Vermont, racism often takes on a subtler form where Black individuals are pitted against one another rather than in a straightforward Black versus White scenario.

22. Despite his outward appearance as a timid, unassuming Black man, Jordan was unwittingly being utilized by white individuals to perpetuate a form of racism under the radar that is my belief because it was obvious,

23. Approaching the HUD office's window seeking direction, I was initially met by a white man. Glancing to my left, my eyes locked with a Black man, whom I immediately recognized as Jordan. Because obviously I looked up his picture online.

24. Also, I knew that the rarity of multiple Black lawyers being in that setting and working at that office was rare so that solidified my intuition that that was him.

25. Pointing directly at him, I uttered, "the Black man, please," prompting the old white man to fetch Jordan, who was visibly taken aback by my unexpected appearance.

26. Engaging him with deep eye contact which I am good at, I questioned, "You're Jordan," to which he confirmed with a simple "yes." Observing his demeanor and stature with a look that only sirens and beautiful women know how to give, I then said, "as in the University of Denver School of Law Jordan. And he sheeply said yes. I said it as a not to self to never apply to the law school unless under emergency circumstance. Also because Jordan is just so corny I wanted to know if he's corniness as in any way contributed to his legal education. I think in new ways

27. Upon our introduction and my unique line of question, I couldn't help but observe Jordan attentively, again with my deep eye contact which is my superpower.

28. Strangely, I noticed a considerable change in his demeanor from my first glance. He obviously was not a eye contact person. But in my mind we are behind a glass wall. All I have is deep eye contact to see if he was lying to me.

29.  It dawned on me that there was an unusual bulge that eroding but in a very small manner of course from his Crotch area and his bottom half, a sight that was perplexing, to say the least.

30. And it was getting bigger, firm, and more noticeable. I found myself at a loss for words like is this really happening to me, glancing back and forth between Jordan and my watch, attempting to process what was unfolding before me asking question in my head like, Is this man really hard right now? I thought he was gay? Is he not used to hot chicks, like what is happening? These where the thoughts in my head. I am a cool girl, so I was trying to not show how weird this experience?

31. Unnerved yet composed, I swiftly glanced at my watch, a subtle hint of my discomfort, and expressed, "I'll deal with you later," before making a swift exit.

32. As I walked away, Jordan stopped me with a question something like "Keren, what do you mean by that?" I glanced at him, hinting at his penis area with my eyes and without words. But then I said, "You know what I mean,"

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 3

33. I chuckled as I walked off, deciding not to mention the awkward situation directly.

34. That day, I felt confident in my feminine energy, I was wearing a pink Lululemon leotard and full face of hot girl makeup for the hot August weather because getting my body together before heading to the Beyoncé concert.

35. My laughter and easy demeanor showed that I chose to handle the situation playfully rather than making it uncomfortable especially for him at work.

36. I figured it was best to avoid discussing Jordan's noticeable arousal directly to keep things light-hearted and breezy.

37. On Aug 24, 2023, 3:50 PM Jordan sent the following email:

"Keren,

I'm writing to inform you that moving forward all communications between us will be in writing, so I will not speak with you over the phone or meet with you in person. When you came into the office last week, you confirmed my identity before saying you would be back for me and leaving. When I asked you what you meant, you just said that I know what you meant. Without knowing your intentions, I perceived this as a threat, and we closed the office. I've discussed the incident with my supervisors over the last few days, and we've determined given this behavior, and your recent insulting comments directed at me in your voicemails, it is best for all communications between you and me to be in writing. The investigation remains open and active, and I will reach out with investigation and conciliation updates when available.

Thank you,

Jordan Staley"

38. On Aug 25, 2023, 12:10 AM I replied with the following:

"Jordan,

Your email response is completely off the mark and nonsensical. You are exhausting to deal with. I can't even believe what I'm reading. Trying to label me as a threat? Seriously? Let me tell you something, buddy. I spotted you easily because you were the only black person in the office. In Vermont, it's not hard to miss the only black person in the office. For a second there I know you probably thought you were special. Don't flatter yourself!

When were you planning on informing me about me being this so-called threat? And if you genuinely felt threatened, why didn't you send this email right away? Any reasonable person would have done that. Stop playing games with me, Jordan. You went to law school and you're a lawyer. You're telling me you couldn't write me a letter or an email to inform me that you felt threatened by me? Clearly, you're mad that I was able to see your weakness, which is how much of a puppet you are to white people. Don't be mad at me because I can call a thing, a thing. You thought you could hide in the shadows for long, hide behind emails and computer screens. I needed to see your face. I wanted a face to face meet up with the federal housing investigator responsible for my case. Is that a problem??

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 4

That's fair game in this country and any reasonable person would want to know and meet the person in charge of their federal housing discrimination Complaint. They don't want you seeing me because I'm a black woman with power, and they want to separate the weak black man they're using from the strong, intelligent, stunningly beautiful black woman they want to oppress. It's a historical and predictable tactic.

Closing the office because of me? PLEASE!! Spare the nonsense!! If you genuinely think I'm a threat, then we have a major problem. Just because I said I'll be back to have a conversation with you doesn't automatically mean it's a threat. It was 3:30 PM, and I had to catch a 4 o'clock bus back to Montpelier. I was short on time. Of course, that didn't cross your mind because it's clear that you have some white people whispering in your ear. Any reasonable black man would understand that Brotha!!

I said I'll be back for you specifically because you're the person assigned to my case. Who else am I supposed to speak to about my case? Do you think I go to the HUD office for fun? Clearly, you're the person I need to speak to when I come there. Again, you are exhausting to deal with.

When I arrived, I confirmed your academic credentials, took a look at my watch, and said I have to go. Then you asked me where I was going, and I said I'll be back for you. What part of our small interaction would cause any reasonable person to consider that a threat? I know there are video cameras with audio in that federal office, so I'm sure you won't have no problem showing and proving how I acted in a threatening manner against you, or how I used threatening language towards you. That caused you to fear for your life and safety and the safety of your fellow coworkers.

I don't have to like you. Matter fact, I don't. I don't like you as my federal housing investigator because you're lazy and you waste time. Remember you chose me. I didn't choose you. If you felt like you couldn't handle this case with someone like me, then you have a professional responsibility and duty to inform both HUD and myself from the very beginning.

Now, I, as a woman with no history of violence, suddenly want to get violent with you, a random black man who works for HUD, whom I just met? You really think I would risk my acceptance to law school or being admitted to the bar just to cause bodily harm to you? Give me a break!!! How dare you call me a threat? Do you even know the definition of a threat? Because there's no way anything I said or did could make you think that I intended to cause you harm. I simply said I'll be back for you. Can't one say that without being labeled a threat? Any black person with a black soul knows exactly what I mean by that. Brotha, open your eyes!!

And what would make you think I have any desire to cause you harm? Out of all the enemies that I have, what makes you think you're on the list?? You're doing the same thing to me that the white people I filed a federal housing complaint against did. Did you notice that?? Predictable human behavior. And Jordan, you are nothing but common.

Show me where in HUD official policy where it clearly states you have the legal right to do what you're doing, and maybe then I'll consider accepting it. Until then, suck it up buttercup!! you have a client that's difficult, what else is new in the world of law and federal investigations.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL
PROTECTION VIOLATION - 5

But if you can't handle me or if you're clearly biased against me, then find someone else to take over this case. What you're saying is complete nonsense, and you should really take a good look at yourself. The white people who feed you this nonsense about misjudging and mistreating your own people are leading you astray. How about that for email communication!!

KEREN

P.S I have no patience for weak and insecure men, who think like young boys, who hold prestigious law degrees and government positions. I demand concrete evidence from you, Mr. Lawyer/Federal Housing investigator. Because words matter!!!! I suggest you remove yourself from this case. I'll be fine without you, I can promise you that… Save your employer from the potential future problems that could arise from you making such unfounded accusations against me. And that's not a threat because I will act on it and you can expect my filing.

39. Throughout this peculiar encounter, I couldn't shake the feeling that my presence seemed to spark unusual behavior in those around me.

40. Though I don't perceive myself as a strikingly beautiful woman, reflecting on these events, it's evident that I possess an innate siren allure that provokes unsettling responses from others, especially men.

41. It is a perplexing reality I find myself grappling with as I navigate through this complex web of human interactions.

42. Robert Greene talks about this concept as siren energy, and I understand that I possess it as a woman. When I am around a man, I give off a sense of danger, as I have the ability to dangerously push them into feeling like a man.

43. It's a natural charm that I have, invoking a sense of allure and peril. However, I am not a threatening person.

44. When Jordan claimed that I was a threat and refused to explain how I was being threatening, it seemed completely irrational to me and the wildest left field comment.

45. I questioned if he was sane.

46. His decision to cut off phone communications was likely because he felt that my voice entailed a sense of danger that he couldn't handle. I have been told I have a phone sex kind of voice.

47. I suspect that Jordan, being a government employee and a lawyer, might not be accustomed to interactions with women who display siren-like qualities, especially if they excite him. Like the lyrics in the Beyoncé song go, "I can see you're excited," and that's exactly what I observed from Jordan.

48. I found his reactions bewildering, leading him to opt for written communication only as he struggled to cope with the situation.

49. In hindsight, I think Jordan became flustered by my boldness and straightforward nature.

50. It's possible that he felt inferior and envious by me because men get jealous to, hence his abrupt decision to avoid direct conversations.

51. However, I refuse to fight, especially in situations where I am wearing a $147 Lululemon Pink leotard wearing a full face of expense supermodel pat McGrath make up and especially to cause a fight in a government office

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 6

and with government employee. Especially in a office where the Secret Service is in close proximity as in next door.

52.  The accusation seemed absurd to me, reflecting Jordan's discomfort with a woman who challenges his norms. I don't fight and I never fight because pretty girls don't fight. I wouldn't even fight a the girl my boyfriends cheated on me with so why would I fight a government employee.

53. This isn't about being aggressive or confrontational—it's about being happy and confident.

54. My case at HUD echoes similar stereotypes I was being accused by Jordan, merely because I am a black woman they always like to paint me as aggressive even though I have no history of fighting because I am not one to fight it is against my religion.

55. People may racistly assume I am aggressive because I am black women, but in reality, I'm just a happy hot women enjoying life and they are bothered.

56. My openness and self-assuredness may have unsettled Jordan, but that doesn't translate to being a threat.

57. Pretty girls don't fight, and my actions reflect that narrative.

58. Despite my efforts to address the issue and seek resolution, our relationship soured, and my concerns were dismissed.

59. After the incident, I reached out to the HUD director for assistance. Unfortunately, the promised follow-up never happened.

60.  I suggested reviewing camera footage to clarify matters since it is a government building, but Jordan declined, seemingly avoiding the truth because of personal discomfort.

61. As tensions escalated, I felt compelled to stand up for the truth.

62. Initially, I had defended and protect Jordan due to our shared background as being black, but I realized this solidarity was pointless.  And I was disheartened by the realization that such solidarity could be misused to perpetuate discrimination.

63. Because if he was willing to lie on me and claim that I was a physically violent person which is a strong lie to say to a non-violent girl then I was willing to tell the truth that he's a horny man who clearly cannot control his penis in the presence of a hot girl.

**SPRINKLE SPRINKLE**

64. I am petitioning this case before the federal courts not because of an egregious lie told against me by a federal employee, but because it defies everything I believe in. As a follower of the International Sprinkle Sprinkled movement led by Shera seven, it is ingrained in me to embody qualities of softness, femininity, and a non-confrontational nature especially when you are dealing with a man.

65.  I have never harbored any intentions of causing harm or posing threats, especially towards any government personnel, such as federal agents or employees, even in instances of discrimination that I may have faced and I know they were treating me wrong

66. In a past incident with my former employer, the Howard Center, where I was pushed and assaulted by a client, I refrained from fighting and retaliation as I stand by resolving conflicts in a court of law.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 7

67. Some may attribute this principle to my religious belief of turning the other cheek, but ultimately, it's about knowing when and where to engage in a battle.

68. I am not one to incite aggression or to fight unless under necessity, I don't even comprehend what it means to be confrontational, or threating towards a grown man, particularly in my current phase of embracing my soft girl era and life.

69. Even in relationship, I don't argue with my man. I let him have his way. I always take a feminine and nurturing approach towards dealing with men, especially men who are not my boyfriend.

70. However, when faced with false accusations and fabrications by individuals like Jordan STALEY, a government employee, my sense of justice compelled me to take action.

71. The absurdity of these claims against me, particularly in light of my career and life pursuits and beliefs, only strengthens my resolve to seek accountability and truth through legal means.

72. I am invested in governmental studies, pursuing a master's degrees, with a particular focus on government affairs at Harvard University.

73. This case is significant to me as it challenges the misconceptions and misrepresentations that hinder the advancement and fair treatment of women in various spheres. I'm currently pursuing a government-related degree at Harvard University, and I deeply believe in the power of the system. That's why it's crucial for me to stand up for what I believe in

74. By addressing these falsehoods in court, my aim is not to propagate scandal or deceit but to demand accountability and uphold the principles of honesty and integrity.

75. The notion that I, a proponent of the Sprinkle Sprinkled movement, would engage in hostile behaviors towards a government official is unfounded and goes against everything I stand for.

76. Though I lack a law degree and because I can't find a non racist Vermont they think they can get way with their evil malicious action, my commitment to truth and justice motivates me to present this case diligently and earnestly before the court.

**CAUSE OF ACTION**

**COUNT ONE:**

**Unlawful Suppression of Free Expression by a Government Employee against a U.S. Citizen, in Violation of the First Amendment to the United States Constitution, Pursuant to 42 U.S. Code § 1983, and Founded Upon the Doctrine of Respondeat Superior. (AGAINST ALL DEFEDANTS)**

77. Plaintiff hereby incorporates and realleges Paragraphs 1 through 76, as though fully set forth at length herein.

78. The Defendant's actions have led to a breach of my First Amendment entitlements by impeding my liberty of expression.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 8

79. The remark "I'll deal with you later" was emblematic of my emotions and did not constitute a real threat, falling within the realm of protected speech.

80. In accordance with 42 U.S. Code § 1983, the Civil Rights Act provides a mechanism for individuals to seek redress when their constitutional rights, as guaranteed by the First Amendment of the United States Constitution, are violated by individuals acting under color of state law.

81. The essence of Section 1983 is to hold government employees accountable for their actions that result in the deprivation of rights granted by the Constitution.

82. In the case at hand, Jordan, a government employee working for the Department of Housing and Urban Development (HUD), is tasked with investigating discrimination complaints.

83. As a representative of a government entity, Jordan is considered to be acting under color of state law.

84. As such, he is bound to uphold and protect the constitutional rights of individuals, including the right to free speech as enshrined in the First Amendment.

85. Through the illegal restriction of my freedom of expression during our meeting, Jordan, in his capacity as a government official, encroached upon my First Amendment liberties.

86. This violation constitutes an offense against my constitutional rights falling within the scope of Section 1983.

87. Moreover, invoking the tenets of respondent superior, HUD, as the employer of Jordan, may be held vicariously responsible for the actions of its personnel that led to the abridgment of my constitutional entitlements.

88. The implementation of Section 1983 in this situation functions to protect individuals from transgressions committed by government employees and guarantee accountability for acts that breach intrinsic constitutional liberties, such as the right to free speech.

89. As a direct consequence of Defendant's actions, the Plaintiff has incurred damages, including emotional distress and a chilling effect on my ability to express myself freely.

90. Defendant, by overseeing and engaging in conduct that stifled my expression, is in breach of Plaintiff constitutional rights under the First Amendment.

91. Defendant HUD is vicariously liable for constitutional violations, commissions, or omissions of its employees and/or agents who were was at all times relevant hereto acting on behalf of defendant HUD and within the

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 9

scope of their employment with defendant HUD, under the doctrines of respondeat superior and ostensible agency.

92. At all relevant times, defendant HUD and employee Jordan Staley had a duty to act in accordance with the legal standards of the United States Constitution and to act as a reasonable government federal agency would under the same or similar circumstances.

93. Defendant HUD, along with employee Defendant Jordan Staley, acted in a manner that was malicious, wanton, willful, oppressive, and/or demonstrated a reckless indifference to my rights under the U.S. Constitution.

94. The baseless and severe claim suggesting that I intended to cause physical harm to a government employee within a government office carries significant weight.

95. The necessity for Defendant Jordan to fabricate such a serious accusation indicates the severity of his actions and his perceived need for self-protection through the creation of a monumental lie.

96. As an attractive, hot pretty woman, I often face various forms of sexual harassment and inappropriate behavior from men. It's one of the disadvantages of pretty privilege.

97. I have encountered situations where men have shown me explicit sexual gestures, making me feel uncomfortable.

98. Some men seem to be overly fixated on my hot girl appearance and exude a level of sexual interest that can be overwhelming for me to experience. I recognize that my confident energy can sometimes attract undue attention for men and sometimes women.

99. Being a bombshell comes with its fair share of unwanted attention.

100. I've had my fill of inappropriate encounters with men who couldn't handle my sexy hot girl vibe.

101. Picture this - I'm out there looking smoking hot on hot August day, feeling myself, and this guy Jordan, who happened to me be a government employee just loses his cool when he see me. He obviously grew up as the nerdy boy no girl wanted and thought going to law school and becoming a government employee would help but did not.

102. He was clearly overwhelmed by my hot girl energy, and the next thing I know, bam, he's penis bulging out of his pants

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 10

103. Naturally, I had to take a moment to process what was going on. The dude's reaction was a mix of embarrassment and awkwardness, probably because he didn't expect me to be that stunning.

104. I mean, come on, I know my worth, and that day I was radiating confidence left, right, and center.

105. As I probed his actions, I couldn't help but wonder about his motives. Maybe he wasn't used to dealing with someone like me - a head-turner who knows her power. Perhaps he was worried about repercussions in his professional circle if word got out about his inappropriate behavior.

106. So, yeah, I might have stared at his package for a second too long. I was just trying to figure out if he was for real or if it was all just a show.

107. Honestly, why would the hot girl want to fight or harm the guy with the biggest penis. I do believe Jordan is more of a grower then a shower. But if his penis is really as big as it was that day, then I rather be on top of him then harm him.  I am just being honest with the court. All the hot girls understand me and my logic.

108. I'm not one to back down from a challenge, but honestly, why would I even bother to harm with a guy who's packing heat? Those with the big ones usually signal trouble, if the court knows what I mean. my gaze was more disbelief than a threat. I was just caught off guard by his audacity and truly his penis size. It's not like I am around men who have big penis often. SO yeah, I was like taken back.

109. It appears that the only way he felt he could shield himself was by resorting to lies in order to suppress the actual truth. As a result, such that an award of punitive damages is warranted.

110. I adhere to a non-violent approach in my interactions, firmly rooted in my personal values and religious convictions.

111. Not only is fighting contrary to the principle that "pretty girls don't fight," but it also contradicts my religious beliefs.

112. My faith, which guides me through the teachings of the Kingdom faith as outlined in the Bible, emphasizes seeking divine intervention rather than resorting to physical altercations.

113. It was deeply unsettling and confusing to find myself unjustly accused of intending to physically harm a a government employee within the confines of a governmental building.

114. I love our government. I am getting my master's in government from Harvard University. So why would I want to harm a government employee.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 11

115. Such baseless accusations not only cast doubt on my character but also stand in direct contradiction to the fundamental principles that I hold dear.

116. The falsehood propagated by Jordan not only poses a threat to my future but also constitutes a grave infringement upon my deeply held faith.

117. As someone aspiring to pursue graduate or law school education, the implications of being associated with an unfounded accusation, concocted by Jordan, of inciting violence towards a government official within a government edifice are profound, alarming, and utterly preposterous.

118. Jordan, likely out of embarrassment or in a misguided attempt to protect his professional standing, resorted to fabricating this harmful lie against me.

119. I don't have a penis, so I'm not familiar with how they function or what they do. However, I can definitely tell when one is bulging out of a man's pants. Unless Jordan is exceptionally well-endowed, which seems unlikely based on his shoe size, I had a feeling something wasn't quite right.

120. Moreover, the failure of Defendant HUD to conduct a thorough investigation to substantiate Jordan's claims adds to the injustice of the situation.

121. In a government facility equipped with surveillance cameras, any alleged physical threat on my part would have been captured on video, exonerating me from such baseless accusations.

122. "Dealing with someone later" does not inherently imply resorting to violence but rather suggests a resolution to problem, or to most normal people except for Jordan, it is recognized as simple dialogue.

123. The part where I mentioned, "I said I'll deal with you later," stemmed from the uncomfortable situation I found myself in.

124. When I saw him and his penis in what I thought to be an erect manner, it made me feel uneasy and deeply uncomfortable, and as a woman, I reserve the right to remove myself from such a situation.

125. This declaration was not a sign of inherent violence on my part. Jordan is fully aware that violence is not in my nature.

126. I don't even possess the knowledge of how to be violent, especially towards a government employee.

127. Perhaps, as a government employee Defendant Jordan used to a certain environment, he felt out of his depth in my company. Maybe he underestimated my sexual allure or felt insecure in my presence. These thoughts have

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL
PROTECTION VIOLATION - 12

led me to believe that his behavior and the lie that said after was driven by a mix of nerves and apprehensions about potential repercussions.

128. Harming or threatening a government employee is a serious federal criminal offense that can lead to federal prison time. Why would I jeopardize everything I have worked for and risk my future over someone like Jordan Staley, whom I had just met for the first time? like he really thinks he is worth me going to federal prison for. This man is not right in his head.

129. Disliking someone does not equate to wanting to cause harm. The idea of harming a government employee is extreme and out of character for me and any normal pretty girl really.

130. My actions and comment were an act of self-preservation and was expressed in a way that is clearly constitutionally protected under the First amendment of the U.S Constitution.

131. As a result of the injury sustained by Plaintiff due to defendant HUD and its Employee Jordan Staley Plaintiffs have suffered and/or will continue to suffer the following damages:

132. a) Past and future trust in our U.S Government companies;

133. b) Temporary loss of enjoyment of life;

134. c) Past and future pain and suffering, inconvenience and emotional distress.

135. I will have to engage in retail therapy for a very long time in order to heal from the harm that has been caused form the Defendants.

136. WHEREFORE, Plaintiffs demand judgment for this First cause of action against defendants in the amount of seven hundred thousand dollars ($700,000.00), exclusive of interests, court fees, any potential attorney consulting fees and costs.

### COUNT TWO

### DISCRIMINATION DUE TO RACE, COLOR, GENDER IN VIOLATION TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR

### (AGAINST ALL DEFEDANTS)

137. Plaintiff hereby incorporates and realleges Paragraphs 1 through 136, as though fully set forth at length herein.

138. Defendant, Jordan, in his capacity as a federal investigator assigned to Plaintiff's discrimination case, had a duty to adhere to Title VI of the Civil Rights Act of 1964.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 13

139. Despite this duty, Defendant engaged in discriminatory conduct against Plaintiff, creating a hostile and uncomfortable environment during their interactions.

140. The law at hand, as stipulated in the Civil Rights Act of 1964 under Title VI, unequivocally prohibits discrimination on the basis of race, color, and national origin in programs and activities that receive federal financial assistance.

141. Throughout the course of our interactions, Defendant had a clear duty to adhere to the principles enshrined in Title VI, ensuring that all individuals involved in discrimination cases are treated fairly and impartially.

142. Regrettably, Defendant's actions flagrantly disregarded these statutory obligations, exposing a pattern of intentional discrimination against me, a Black woman.

143. By leveraging racial dynamics to perpetuate discriminatory actions discreetly, Defendant showcased favoritism, racist distain, and partiality based solely on my race and gender, thus breaching the mandated standards of neutrality and professionalism outlined in Title VI.

144. Defendant, Jordan Staley, as a federal investigator operating under HUD, had a duty to uphold the principles of Title VI by providing fair and impartial treatment to all individuals involved in discrimination cases.

145. However, Defendant's conduct demonstrated a clear violation of these statutory obligations. Plaintiff, as a Black woman, faced intentional discrimination at the hands of Defendant, who exploited racial dynamics to perpetuate discriminatory actions in a covert manner.

146. By displaying bias, discomfort, and partiality based on Plaintiff's race and gender, Defendant failed to perform his duties neutrally and professionally as required by Title VI.

147. Moreover, Defendant's deliberate discrimination manifested in various troubling instances, including the introduction of barriers that hindered my pursuit of justice by making false promises of assistance and broadcasting misinformation about the investigatory process and current state of the investigation.

148. These actions not only shattered my trust in the investigatory mechanisms but directly infringed upon my civil rights as safeguarded by Title VI.

149. The intentional discrimination wielded by Defendant Jordan not only inflicted emotional distress upon me but also jeopardized the sanctity of the investigative procedures and process, signaling a grave departure from the

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 14

1    principles of fairness and non-discrimination underpinning Title VI. Jordan is bound by law to be neutral could

2    not be.

3    150. The U.S. Department of Housing and Urban Development's Office of Fair Housing and Equal Opportunity

4    (FHEO) apply under Title VI of the Civil Rights Act of 196412.

5    151. Title VI prohibits discrimination on the basis of race, color, and national origin in programs and activities

6    receiving federal financial assistance.

7    152. In examining the conduct of Defendant, Jordan Staley, it becomes apparent that his intentions to discriminate

8    against me were clear and manifold, as evidenced by various instances of subversion and deliberate obstruction

9    of Justice.

10    153. One instance was when I reached out to the director of the HUD field office in Burlington, who falsely assured

11    me that Boston would contact me promptly to address the discriminatory treatment I endured which made no

12    sense. Why would Boston deal with issues out of the Burlington office.

13    154. However, no such contact or assistance was coming, indicating a purposeful neglect and disavowal of their

14    responsibilities to address and rectify the discrimination I faced.

15    155. This overt dismissal of my grievances and the promised action to address the injustice highlights a pattern of

16    intentional discrimination aimed at silencing and marginalizing me due to my race and color.

17    156. Defendant HUD is vicariously liable for the discriminatory acts, commissions, or omissions of its employees

18    and/or agents who were was at all times relevant hereto acting on behalf of defendant HUD and within the

19    scope of their employment with defendant HUD, under the doctrines of respondeat superior and ostensible

20    agency.

21    157. At all relevant times, defendant HUD and Defendant Jordan Staley had a duty to act in accordance with the

22    legal standards of under Title VI of the Civil Rights Act of 1964 and to act as a reasonable federal agency

23    would under the same or similar circumstances.

24    158. Defendant HUD and Defendant Jordan Staley breached its legal duty under Title VI of the Civil Rights Act of

25    1964 and were discriminatory.

26

27

28    VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL
PROTECTION VIOLATION - 15

159. Defendant HUD and Defendant Jordan Staley conduct were malicious, wanton, willful, oppressive, and/or exhibited a reckless indifference to my rights under Title VI of the Civil Rights Act of 1964 and safety of my emotions of being intentionally discrimination against such that an award of punitive damages is warranted.

160. As a result of Defendant's discriminatory conduct, Plaintiff suffered significant emotional distress, an erosion of confidence in the investigatory process, and a denial of the impartial treatment guaranteed under Title VI and the process of investigation of U.S. Department of Housing and Urban Development Office of Fair Housing & Equal Opportunity.

161. . The intentional discrimination displayed by Defendant not only inflicted emotional anguish on Plaintiff but also jeopardized the integrity of the investigation process, indicating a systemic failure to uphold the mandated standards of fairness and non-discrimination.

162. Defendant's actions markedly contravened the legal protections enshrined within Title VI, resulting in tangible and intangible injuries for me.

163. It is evident that Defendant's intentional discrimination was entrenched in bias and aimed at disparaging me based on my race and color, thereby subverting the regulations set forth to ensure equitable treatment for all individuals.

164. By flouting the standards delineated in Title VI, Defendant not only transgressed my civil rights but also propagated a culture of discrimination that undermines the bedrock principles of fairness and equity upon which civil rights legislation is anchored on and which I relied upon under U.S. Department of Housing and Urban Development Office of Fair Housing & Equal Opportunity.

165. To wit, defendant HUD directly failed to take steps to prevent conduct of discrimination that posed a dire and foreseeable risk to Plaintiff.

166. As a result of the injury sustained by Plaintiff due to defendant HUD and Defendant Jordan Staley, Plaintiffs have suffered and/or will continue to suffer the following damages:

a) Past and future costs for retail therapy and self- care treatments;

b) Temporary loss of enjoyment of life;

c) Past and future pain and suffering, inconvenience and emotional distress.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 16

167. WHEREFORE, Plaintiffs demand judgment for this second cause of action against defendant in the amount of ninety thousand dollars ($90,000.00), exclusive of interests, court fees, any potential attorney fees and costs.

## COUNT THREE

### RETALIATION IN VIOLATION OF 42 U.S. CODE § 12203 AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION UNDER THE DOCTRINES OF *RESPONDEAT SUPERIOR*

168. Plaintiff hereby incorporates and realleges Paragraphs 1 through 167, as though fully set forth at length herein.

169. 42 U.S. Code § 12203, titled "Prohibition against retaliation and coercion," is a part of the U.S. Code that provides protections against retaliation and coercion in the context of civil rights.

170. The disturbing actions of Defendant in dismissing my case subsequent to the encounter at the HUD office are a clear demonstration of unlawful retaliation against me for exercising my right to free speech.

171. This retaliation has effectively silenced my quest for justice in the face of racial discrimination and infringed upon my fundamental rights.

172. Following our interaction at the office, Defendant's HUD and Defendant Jordan dismissal of my case signifies unlawful retaliation for exercising my right to free speech.

173. By choosing to communicate solely through writing, Defendant Jordan engaged in discriminatory conduct, limiting my ability to seek justice for racial discrimination and infringing upon my rights.

174. The decision to withhold vital information during the investigation, citing baseless concerns of me being a threat, serves as a clear act of retaliation against me.

175. This action further violates my rights under the Equal Protection Clause, denying me fair treatment.

176. The unfounded accusations and dismissal of my case stem from racial bias and stereotypes, showcasing Defendant Jordan discriminatory treatment based on my race and gender.

177. This disparate treatment is a direct violation of the Equal Protection Clause, depriving me of the equal treatment and justice I am entitled to under the law.

178. As a result of Defendant's retaliatory and discriminatory actions, I have suffered emotional distress, reputational harm, and a denial of justice.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 17

179. The impact of Defendant's actions has caused significant emotional trauma and hindered my pursuit of legal remedies.

180. Defendants HUD and Defendant Jord, in their professional capacities as professional government federal employees were discriminatory in their conduct and in carrying out their duty to the Plaintiff during the course off my racial discrimination case with HUD.

181. Defendant's discriminatory conduct towards me is evident in their failure to investigate the veracity of Investigator Jordan's claims that I posed a threat.

182. By neglecting to ensure the accuracy of these accusations and taking no precautionary measures to prevent retaliatory actions by Jordan, Defendant not only perpetuated discrimination but also potentially put me at risk.

183. As per the duty of HUD, to guarantee that no retaliatory actions will be taken by an investigator following such claims, ensuring fair treatment and protection of my rights under the law, including freedom from retaliation based on unfounded allegations and equal access to justice.

184. Defendant HUD and Defendant Jordan were all fully aware of the relevant facts and circumstances yet deliberately violated various HUD anti-retaliatory policies even when Defendants were apprised of such policies.

185. Defendant HUD is vicariously liable for the retaliatory acts, commissions, or omissions of its employees and/or agents who were was at all times relevant hereto acting on behalf of defendant HUD and within the scope of their employment with defendant HUD, under the doctrines of respondeat superior.

186. At all relevant times, defendant HUD had a duty to act in accordance with the legal standards of retaliation laws and to act as a reasonable federal agency would under the same or similar circumstances.

187. Defendant HUD breached its duty and were retaliatory.

188. Defendant HUD and Defendant Jordan conduct were malicious, wanton, willful, oppressive, and/or exhibited a reckless indifference to my rights such that an award of punitive damages is warranted.

189. To wit, defendant HUD directly failed to take steps to prevent conduct that posed a dire and foreseeable risk to Plaintiff.

190. As a result of the injury sustained by Plaintiff due to defendant HUD and Defendant Jordan retaliatory Plaintiffs have suffered and/or will continue to suffer the following damages:

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 18

a) Past and future costs for retail therapy and self-care treatment;

b) Temporary loss of enjoyment of life;

c) Past and future pain and suffering, inconvenience and emotional distress.

191. WHEREFORE, Plaintiffs demand judgment for this third cause of action against defendants in the amount of three hundred thousand dollars ($300,000.00), exclusive of interests, court fees, any potential attorney fees and costs.

## COUNT FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (ALL DEFENDANTS)

192. Plaintiff hereby incorporates and realleges Paragraphs 1 through 191, as though fully set forth at length herein.

193. In the absence of confirmed fact gossip and rumor is sanctified as the truth and history is recorded.

194. Defendant falsely insinuated that I intended harm to a federal employee, damaging my reputation and potentially jeopardizing my future career opportunities, particularly in the legal and public domains.

195. Defendant Jordan's wrongful actions, specifically making false claims that I intended harm towards a government employee, amount to intentional infliction of emotional distress.

196. These baseless accusations caused me significant mental anguish, emotional turmoil, and distress.

197. The Director of the HUD field office in Burlington's failure to address the gravity of these false allegations exacerbated my emotional distress. I was unfairly treated, leading to bias and unjust treatment in the handling of my case.

198. As a result of Defendant Jordan's false accusations and the mishandling of my case by the Director of the HUD field office, I have suffered extensive emotional distress.

199. This distress has resulted in severe mental anguish, humiliation, and profound psychological harm.

200. My reputation has been unfairly tarnished, subjecting me to societal judgment and personal turmoil.

201. The emotional and mental suffering I have endured has significantly impacted my overall well-being, causing disruptions in my daily life and relationships.

202. Due to the Defendant's actions, I have endured profound emotional pain and distress that necessitate legal intervention.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 19

203. The unsettling and inappropriate physical reaction I observed from Jordan during our encounter at the HUD office inflicted significant emotional turmoil upon me.

204. By implying that my actions were detrimental to a federal employee, Jordan not only caused me immense emotional distress but also put my career, reputation, and future aspirations at risk.

205. Jordan's groundless insinuations, based on hearsay rather than facts, painted a distorted picture of me, leading to severe emotional distress and potential harm to my professional standing and personal image.

206. His intentional misconduct has resulted in considerable emotional anguish, damages, and potential repercussions for my career in law and public perception.

207. Jordan's insidious behavior not only jeopardized my emotional well-being but also posed a serious threat to my professional standing and future career prospects.

208. By inflicting such distress and making baseless accusations, Jordan straddled the line between acceptable conduct and malevolent intent, leading to an onslaught of emotional torment and mental duress that extends far beyond the immediate encounter.

209. The implications of harm towards a federal employee, an unfounded and damaging assertion, could tarnish my reputation, career trajectory in law, and future aspirations, including potential roles in public service.

210. The distress caused by Jordan's reprehensible actions has led to significant mental anguish, emotional turmoil, and psychological harm, affecting my daily functioning and professional life.

211. This distress has manifested in heightened anxiety, sleep disturbances, and emotional breakdowns, severely impeding my ability to operate effectively in both personal and professional spheres.

212. Furthermore, the intentional misrepresentation and false insinuations have jeopardized my professional reputation and career prospects, leading to tangible losses in terms of career advancement, earnings potential, and overall trajectory.

213. The emotional distress inflicted by Defendant Jordan has not only caused immediate harm but also has the potential for lasting repercussions on my mental health and well-being.

214. The severe emotional distress experienced as a result of Jordan's intentional actions has had a profound and enduring impact on my life, causing significant disruption and anguish that extend beyond the immediate encounter.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 20

215. The damaging effects require redress and compensation to alleviate the harm inflicted upon me.

216. As a direct result of Defendant Jordan's intentional infliction of emotional distress, Plaintiff has suffered severe and tangible damages, both emotionally and professionally.

217. The distress caused by Jordan's reprehensible conduct has led to significant mental anguish, emotional turmoil, and psychological harm that continues to impact Plaintiff's overall well-being and mental state.

218. This distress has manifested in heightened anxiety, sleep disturbances, and emotional breakdowns, severely affecting Plaintiff's ability to function in their daily life and professional endeavors.

219. Moreover, the intentional misrepresentation and false insinuations created by Jordan have jeopardized Plaintiff's professional reputation and career prospects, particularly in the field of law and any potential public service roles.

220. The unwarranted accusations of intending harm towards a federal employee have the potential to damage Plaintiff's credibility, integrity, and standing within the legal community and beyond.

221. This tarnishing of reputation and potential consequences for future career opportunities have led to tangible losses in terms of professional advancement, earnings potential, and overall career trajectory.

222. The emotional distress inflicted by Defendant Jordan has not only caused immediate harm but also has the potential for lasting repercussions on Plaintiff's mental health and well-being.

223. The severe emotional distress experienced as a result of Jordan's intentional actions has had a profound and enduring impact on Plaintiff's life, causing significant disruption and anguish that extends beyond the immediate encounter.

224. The damaging effects of this intentional infliction of emotional distress are multifaceted, encompassing both psychological trauma and professional setbacks that require redress and compensation to alleviate the harm inflicted upon the Plaintiff.

225. As a result of all Defendants' deliberate actions of intentional infliction of emotional distress of Plaintiff, Plaintiff was harmed.

226. WHEREFORE, Plaintiffs demand judgment for this fourth cause of action against defendants in the amount of five hundred thousand dollars ($100,000.00), exclusive of interests, court fees, any potential attorney consulting fees and costs.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 21

**COUNT FIVE:**

**DEFAMATION / LIBEL**

227. Plaintiff hereby incorporates and realleges Paragraphs 1 through 226, as though fully set forth at length herein.

228. The cause of action I bring forth revolves around the tort of defamation, arising from the unjust and baseless actions of Defendant Jordan, which have gravely impacted my reputation and inflicted profound emotional distress.

229. Amidst my efforts to address discriminatory practices at my housing facility, Defendant Jordan's defamatory conduct has caused significant harm and distress.

230. The sequence of events leading to this defamation claim began with my engagement with HUD to investigate alleged discriminatory practices affecting me.

231. Despite my initial reservations about collaborating with Investigator Jordan, I navigated the process professionally and cordially as I could especially since I knew that Jordan had no interest in helping me and as a smart girl I was just playing the game but I could feel the racism and them using black people to drive the vehicle of racism.

232. However, a critical turning point unfolded during an in-person visit to the HUD office, where a jarring encounter birthed false perceptions and actions that ultimately defamed me.

233. In an email timestamped August 24, 2023, at 3:50 PM, Defendant Jordan unilaterally imposed restrictions on future communications, asserting that my actions were perceived as threatening.

234. This baseless characterization has not only besmirched my reputation but has also inflicted deep emotional distress and mental anguish.

235. The groundless depiction of me as a threat has reverberated within my personal and professional circles, causing tangible harm to my reputation and mental well-being.

236. Defendant Jordan's defamatory conduct has irreparably damaged my character and standing within the community, exacerbating existing emotional suffering and distress.

237. The defamatory statements and actions have tangibly resulted in demonstrable damages, including severe reputational harm, emotional distress, and obstruction of the investigative process I initiated.

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 22

238. As a consequence of Defendant's defamation, Plaintiff has suffered significant harm, necessitating legal remedy and redress.

239. Defendant Jordan Staley breached his duty to tell the truth because when I spoke to the Director of HUD Vermont field office, he never heard of this situation. So Jordan lied because how can the Director of HUD Vermont Office not know a threat one of his employee where so called "threated" and that the "office had to close" because of the alleged threat they mad.

240. The office closed because it was five P.M not because a pretty girl told him I will deal with you later and he felt threatened.

241. Plaintiff was harmed as a direct result of Defendant Jordan Defamation.

242. Defendant HUD, in their official capacities as classified as professional government employees were negligent in their conduct to determine if their employee was telling the truth.

243. WHEREFORE, Plaintiffs demand judgment for this fifth cause of action against defendants in the amount of fifty thousand dollars ($50,000.00), exclusive of interests, court fees, any potential attorney consulting fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

244. For the first cause of unlawful suppression of free expression by a government employee against a U.S. citizen, in violation of the first amendment to the United States constitution, pursuant to 42 U.S. code § 1983, and founded upon the doctrine of respondeat superior, in the amount of seven hundred thousand dollars ($700,000.00);

245. For the second cause of discrimination due to race, color, gender in violation title vi of the civil rights act of 1964, under the doctrine of respondeat superior, in the amount of ninety thousand dollars ($90,000.00);

246. For the third cause retaliation under 42 U.S. code § 12203 and equal protection clause of the fourteenth amendment of the U.S. constitution under the doctrines of respondeat superior, defendants in the amount of three hundred thousand dollars ($300,000.00);

247. For the fourth cause of action intentional infliction of emotional distress, in the amount of five hundred thousand dollars ($500,000.00);

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 23

248. For the fifth cause of action defamation, in the amount of fifty hundred thousand dollars ($50,000.00);

249. Plaintiffs pray for punitive damages against Investigator Jordan Staley in order to punish his unprofessional behavior and deter similar actions in the future, in the amount of nine hundred thousand dollars ($900,000.00)

250. Any further relief that this Honorable Court deems just and proper in the circumstances of this case.

Dated this Fifteenth day of August 2024.

8/15/2024

_____

KEREN SITA

VIOLATION OF FIRST AMENDMENT RIGHTS, RETALIATION, RACIAL DISCRIMINATION, EQUAL PROTECTION VIOLATION - 24